## COMMONWEALTH v. A. N. LEWIS.

APPEAL BY DEFENDANT FROM THE COURT OF QUARTER SESSIONS OF BUCKS COUNTY.

Argued February 11, 1891—Decided February 23, 1891.
[To be reported.]

(*a*) By § 1, act of March 29, 1869, P. L. 22, it is provided that any person who shall wantonly or cruelly ill-treat, overload, beat or otherwise abuse any animal, shall be deemed guilty of a misdemeanor. The defendant being indicted for a violation of this act, the jury returned a special verdict finding in substance the following facts:

(*b*) The defendant was a member of an association accustomed to hold pigeon-shooting matches, for the test of skill in marksmanship. For that purpose, the defendant, at such a match, fired with a gun at certain pigeons liberated from a trap, killing one and wounding another. The wounded bird was killed as soon as its condition was discovered; and according to custom, the birds killed were sold for food:

Statement of Facts.

1. While there might, perhaps, be a violation of the act of 1869 at a shooting match, the facts found by the jury do not bring this case within it, as the defendant had a right to kill the pigeons, and there was no finding that the suffering of the one wounded by him was greater, because of the manner of its death, than if it had been killed in some other way, or that he was guilty of or intended any needless or wanton cruelty.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, and MITCHELL, JJ.

No. 407 January Term 1890, Sup. Ct.; court below, No. 39 September Term 1889, Q. S.

To the number and term given of the court below, the grand jury returned as a true bill an indictment charging that A. Nelson Lewis, on December 14, 1887, with force and arms, etc., did unlawfully, wantonly and cruelly shoot, wound, torture, abuse and ill-treat a certain pigeon, belonging to the said defendant and divers other persons unknown and then and there in the possession of said defendant and said other persons, contrary to the form, etc. The defendant pleaded not guilty.

The statute under which the indictment was drawn is the act of March 29, 1869, P. L. 22, which provides in § 1 : " That any person who shall, within this commonwealth, wantonly or cruelly ill-treat, overload, beat, or otherwise abuse any animal, whether belonging to himself or otherwise, . . . . shall be deemed guilty of a misdemeanor, and on being convicted thereof " shall be fined, etc.

On the trial of the indictment, the jury returned a special verdict, making the following findings of fact :

" That the defendant was a member of an association called the Philadelphia Gun Club, which association is accustomed to hold pigeon-shooting matches upon its grounds at Andalusia, in Bucks county, state of Pennsylvania, for test of skill of marksmanship. That on the fourteenth day of December, 1887, the defendant attended one of said pigeon-shooting matches, and, for the purpose aforesaid, fired, with a gun, upon certain pigeons liberated from a trap, killing one and wounding another. The bird so wounded alighted upon a tree ; and, as soon as its wounded condition was discovered, it was killed by a member of said club for and on behalf of said defendant, according to the custom of said club in regard to wounded birds.

Arguments.

The birds so killed were immediately sold for food, according to the rule and custom of said club."

After argument, the court, YERKES, P. J., on January 27, 1890, filed an opinion, printed in full in 7 Pa. C. C. R. 558, adjudged the defendant guilty as indicted, upon the special finding of the jury, and pronounced sentence imposing a fine of five dollars, etc. Thereupon the defendant, having obtained a special allowance, took this appeal, specifying that the court erred:

1. In adjudging the defendant guilty upon the special finding of facts by the jury.

*Mr. George Northrop* (with him *Mr. George Ross*), for the appellant:

1. The question is, whether the shooting of pigeons as found by the special verdict, is such wanton or cruel ill-treatment or abuse of an animal as to make the person so shooting guilty of a misdemeanor. There is no act of assembly as to the killing of pigeons, except that the game laws prohibit the killing of wild pigeons or squabs while nesting. With this exception, the law allows the shooting of pigeons at any time. Does it make any distinction in the act of shooting, as to whether the bird is killed or only wounded, provided the shooter intends to kill? If the shooting and killing is not a misdemeanor, how can the shooting with intent to kill, and failing to do so, render a person guilty under the act of March 29, 1869, P. L. 22? Does the offence depend solely on the skill of the marksman?

2. If the shooting were for the purpose of wounding or disabling only, the element of wanton or cruel ill-treatment, which constitutes the offence, might arise: State v. Massey, 97 N. C. 468; Commonwealth v. McClellan, 101 Mass. 35; Commonwealth v. Lufkin, 7 Allen 581. But cock-fighting is not indictable under a statute punishing cruelty to animals, as the injury to the cock is an incident only: Morrow's Case, 26 Pittsb. L. J. 86; and so, in this case, the wounding was an incident only. While a criminal intent is immaterial when a statute merely makes an act punishable with a fine, without designating any turpitude, such intent is essential to constitute an offence which the law makes a misdemeanor. Crime and misdemeanor are synonymous terms: 4 Bl. Com., 5; 3 Idem, 2.

Arguments.

3. The English act of 12 & 13 Vict. ch. 92, § 2, does not make cruelty to animals a criminal offence, but merely exacts a fine; whereas our statute declares it a misdemeanor. Therefore, the intent and the act must concur to make the offence. Under the decision of the court below, a man who undertakes to kill any game is liable to indictment if he fails to kill and only wounds. How can a man become proficient in killing birds except by shooting at them? For the shooting of pheasants and quail successfully, just such experience as pigeon shooting affords is necessary. Shooting at glass balls, or the discs called clay pigeons, tossed in the air, does not qualify a man for a wing shot.

*Mr. Thomas Earle White* (with him *Mr. Hugh B. Eastburn*), for the commonwealth:

1. The true question involved is one of public morals, to wit, can the citizens of this commonwealth, under our statute, be permitted to torture or inflict unnecessary pain upon any or all animals for the purpose of sport? It is freely admitted that the right exists to kill animals or birds for food, for preservation as specimens, or for other scientific or necessary purposes. This right is recognized by the game laws, which prescribe the times and methods of lawful killing. But those laws were not intended to legalize the infliction of unnecessary pain and suffering. Their intention was to curtail the admitted right to kill, mercifully.

2. There is a plain distinction between shooting game in a field, and shooting pigeons thrown from traps. It is necessary, in order to obtain game to be used as food, to pursue methods which lead to an occasional wounding and maiming, and such wounding is a necessary incident to the best known methods of procuring wild game. But it is not necessary in order to kill birds already procured, to throw them from traps, and shoot at them, killing some and wounding others; the best known method of slaughter alone is necessary, and whoso departs from that, takes the risk of inflicting unnecessary pain and suffering. Any such infliction of pain is cruelty within the statute: Budge v. Parson, 3 B. & S. 385; Swan v. Sanders, 14 Cox 570; Ford v. Wiley, L. R. 23 Q. B. Div. 203; Commonwealth v. Turner, 145 Mass. 296. That it was done for the purpose of sport can be no justification.

Opinion of the Court.

3. Were the law otherwise, every method of cruel and brutal killing, such as bull baiting, might be justified as methods of killing for food, upon the excuse that it affords sport to butchers. We are asked to regard the defendant rather as a butcher, than as a marksman. So be it. We only contend that the statute imposes upon him the same restrictions as upon the ordinary butcher. The infliction of pain and suffering, can be justified only when the act is done for the good of the animal itself, or better to fit it for the use of man: Murphy v. Manning, L. R. 2 Exch. D. 307. Shooting pigeons from traps, killing some and wounding others, can be classified under neither of these heads. There is an admitted method of immediate killing, without wounding or torturing, entirely under the control of the owner.

4. It is argued that the defendant's intention was to kill, not to maim, and therefore there was not a concurrence of act and intent. The statute is in the nature of a police regulation, and even if it were affirmatively found that the defendant acted without a cruel intention, he should be convicted : Ford v. Wiley, L. R. 23 Q. B. D. 203. The English decisions to that effect are applicable, as the language of the English statute, " if any person shall beat, ill-treat, over-drive, abuse or torture any animal," is practically the same as that of our act. The fact that the former provides only for a fine, does not render the act of cruelty any less a crime : Murphy v. Manning, L. R. 2 Exch. D. 307. At all events, however, one is held to intend the natural consequences of his act, and that the wounding of birds is a natural consequence of trap-shooting, is indicated by the very terms "match " and " test of marksmanship." If such defences as this were allowed, " the law would be practically nullified : " Carlson's License, 127 Pa. 335. Can there be any question that to shoot at birds thrown from a trap, is to " ill-treat " them ?

OPINION, MR. CHIEF JUSTICE PAXSON :

The defendant was indicted in the court below, under the first section of the act of March 29, 1869, P. L. 22, which provides that any person who shall wantonly or cruelly ill-treat, overload, beat, or otherwise abuse any animal, shall be deemed guilty of a misdemeanor, etc. The specific charge in the in-

dictment was that the defendant did " unlawfully, wantonly, and cruelly shoot, wound, torture, abuse, and ill-treat a certain pigeon," etc. The jury found a special verdict, upon which the court below entered judgment for the commonwealth. We are therefore limited to the facts so found.

From the verdict we learn " that the defendant was a member of an association called the Philadelphia Gun Club, which association is accustomed to hold pigeon-shooting matches upon its grounds at Andalusia, Bucks county, state of Pennsylvania, for test of skill of marksmanship ; that on the fourteenth day of December, 1887, the defendant attended one of the said pigeon-shooting matches, and, for the purpose aforesaid, fired, with a gun, upon certain pigeons liberated from a trap, killing one and wounding another. The bird so wounded alighted upon a tree, and, as soon as its wounded condition was discovered, it was killed by a member of said club for and on behalf of said defendant, according to the custom of said club in regard to wounded birds. The birds so killed were immediately sold for food, according to the rule and custom of said club."

We have thus the finding of the jury that the object of this association was to test the skill of its members in marksmanship. In other words, it was a training school for sportsmen, in which they could acquire skill in shooting on the wing. This being the object of the association, the jury further found that the defendant attended " for the purpose aforesaid." It was conceded that, had he killed his bird, he would not have been liable under the act of 1869 ; but having merely wounded it, he was guilty of cruelty under said act ; so that the crime consisted, not in the fact of shooting at the bird, but in wounding instead of instantly killing it. From the facts found by the jury, the defendant has merely been punished for want of skill.

It is doubtless true that much pain and suffering is often caused to different, kinds of game by the unskilfulness of sportsmen. A squirrel, badly wounded, may yet crawl to its hole, and suffer for many hours or days, and die. So with birds. They are often badly wounded, and yet manage to get away only to suffer. It was not pretended that the act applied to such cases. The sportsman in the woods is not responsible for the accuracy of his aim, under the act of 1869. At the same time, it is manifest that much suffering would be spared wild

Opinion of the Court.

game, if sportsmen were better trained. Skill in shooting upon the wing can only be gained by practice. It is not so with inanimate objects. There, accuracy of aim can be acquired by shooting at a mark. It is conceded that the sportsman in the woods may test his skill by shooting at wild birds; why then, may he not do the same with a bird confined in a cage, and let out for that purpose? Is the bird in the cage any better, or has it any higher rights, than the bird in the woods? Both were placed here by the Almighty, for the use of man. They were not given to him to be needlessly and cruelly tortured, and were there anything in the finding of the jury to show that the object of this association was to torture pigeons, we would not hesitate to sustain the judgment of the court below. But no such purpose appears, nor is there any finding that the defendant was guilty of needless and wanton cruelty. The bird was immediately killed, as soon as its condition was discovered.

A distinction was pressed upon the argument, between the case of a captive bird and one at large in the woods. In the latter instance there is a necessity to shoot it in order to capture it for food or other lawful purpose, and, if wounding results, it is an unavoidable incident; while in the case of a captive bird no necessity exists for putting it to death in this way. Some force may be conceded to this as an abstract proposition, but we do not see its application to the facts of this case. The right to kill the pigeon was and must be conceded, and there is no finding of the jury that its suffering was greater because of the manner of its death than if it had been killed in some other way. This is a scientific question which I do not feel myself competent to pass upon. Nor do I think the average juryman is any better qualified to do so. It may be that science, in the future, will discover the method of killing a pigeon with the least possible pain. So far as other animals are concerned, it is perhaps an open question, and the attempt of well-meaning humanitarians, in a sister state, to reduce the suffering of condemned criminals by putting them to death by electricity instead of by hanging, has produced a long controversy which can hardly be regarded as settled. An attempt has been made, so far unsuccessfully, to show that it is unconstitutional because of its cruelty.

We do not say there might not be a violation of the act of

1869 at a shooting match, but, in our view, the facts found by the jury do not bring this case within it.

. The judgment is reversed.